UNITED STATES DISTRICT COURT
NORTHERN DISTRICT NEW YORK
_____

ROGER LEE MATHESON, II,

                    Plaintiff,

                                                          5:09-CV-1045(GTS/TWD)
v.

DAMON KITCHEN and KITCHEN'S
POWER TONG SERVICES, INC.,

                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

THE STANLEY LAW OFFICES, LLP          KEITH R. YOUNG, ESQ.
  Counsel for Plaintiff
500 South Salina Street, Suite 1020
Syracuse, NY 13202

GOLDBERG SEGALLA LLP                   KENNETH M. ALWEIS, ESQ.
  Counsel for Defendants               LISA MARIE ROBINSON, ESQ.
5789 Widewaters Parkway
Syracuse, NY 13214

GLENN T. SUDDABY, United States District Judge

### <u>MEMORANDUM-DECISION and ORDER</u>

Currently before the Court, in this personal injury action filed by Roger Lee Matheson, II

("Plaintiff") against Damon Kitchen and Kitchen's Power Tong Services, Inc. ("Defendants"),

are (1) Defendants' motion to preclude Plaintiff's expert witness testimony, (2) Defendants'

motion for summary judgment, and (3) Plaintiff's cross-motion to preclude Defendants' expert

witness testimony.  (Dkt. No. 19.)  For the reasons set forth below, Defendants' motion to

preclude is granted; Plaintiff's cross-motion to preclude is denied; and Defendants' motion for

summary judgment is granted.

## TABLE OF CONTENTS

I.     RELEVANT BACKGROUND..................................................................................3

      A.     Plaintiff's Complaint.....................................................................................3
      B.     Parties' Briefing on Defendants' Motion to Preclude Plaintiff's
            Expert Witness Testimony..........................................................................3
            1.     Defendants' Memorandum of Law...............................................3
            2.     Plaintiff's Opposition Memorandum of Law.................................4
            3.     Defendants' Reply Memorandum of Law......................................5
      C.     Parties' Briefing on Defendants' Motion for Summary Judgment
            and Plaintiff's Cross-Motion to Preclude Defendants' Expert
            Witness Testimony .....................................................................................6
            1.     Defendants' Memorandum of Law...............................................6
            2.     Plaintiff's Opposition Memorandum of Law.................................7
            3.     Defendants' Reply Memorandum of Law......................................7
            4.     Defendants' Supplemental Memorandum of Law..........................8
            5.     Plaintiff's Supplemental Opposition Memorandum of Law...........9
            6.     Defendants' Supplemental Reply Memorandum of Law.................9
      D.     Undisputed Material Facts Presented by the Parties' Briefing on
            Defendants' Motion for Summary Judgment..........................................10

II.     RELEVANT LEGAL STANDARDS....................................................................15

      A.     Legal Standard Governing Motions to Preclude Expert
            Testimony..................................................................................................15
      B.     Legal Standard Governing Motions for Summary Judgment.................15
      C.     Legal Standards Governing Plaintiff's Claims......................................15

III.     ANALYSIS.............................................................................................................16

      A.     Defendants' Motion to Preclude Plaintiff's Expert Witness
            Testimony..................................................................................................16
      B.     Plaintiff's Cross-Motion to Preclude Defendants' Expert
            Witness Testimony....................................................................................16
      C.     Defendants' Motion for Summary Judgment.........................................17
            1.     Preclusion Under Fed. R. Civ. P. 26(e)(1)(A) and
                Fed. R. Civ. P. 37(c)(1)..............................................................17
            2.     Rejection Under *Jeffreys v. City of New York,*
                426 F.3d 549 (2d Cir. 2005).......................................................20
            3.     Alternative Ground for Dismissal of Plaintiff's Fourth Claim.......26

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, Plaintiff's Complaint alleges that, while Plaintiff was employed by a company

that had been hired as a contractor at a site in Chenango County, New York, on April 27, 2008,

Defendants (which had also been hired as a contractor at the site) carelessly dropped a power

tong onto Plaintiff's hand when his hand was on top of casing, crushing his hand and requiring it

to undergo emergency surgery.  (*See generally* Dkt. No. 1, Attach. 2 [Plf.'s Compl.].)  Based on

these factual allegations, Plaintiff's Complaint asserts two causes of action, which liberally

construed assert the following four claims against Defendants: (1) negligence; (2) violation of

New York Labor Law § 200; (3) violation of New York Labor Law § 240; and (4) violation of

New York Labor Law § 241(6), due to a violation of one or more of four regulations (N.Y.

Comp. Codes R. & Regs. tit. 12, §§ 23-1.5, 23-1.6, 23-1.7 and/or 23-1.10).  (*Id.*)  For a more

detailed recitation of Plaintiff's claims or the factual allegations giving rise to those claims, the

Court refers the reader to Plaintiff's Complaint in its entirety.  (*Id.*)

### B.    Parties' Briefing on Defendants' Motion to Preclude Plaintiff's Expert Witness Testimony

#### 1.    Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants assert the following two arguments

in favor of their motion for preclusion.  (*See generally* Dkt. No. 19, Attach. 13, at 16-24

[attaching pages "11" through "19" of Defs.' Memo. of Law].)  First, Defendants argue,

Plaintiff's expert (Donald E. Wise, P.E.), who has a background as a plumber and supervisor in

the construction of buildings, does not possess the required knowledge, skill, experience,

training, or education, under Fed. R. Evid. 702, to be qualified as an expert on the subject of oil

or gas drilling rigs (much less the more narrow subject of the operation of power tongs on those rigs). (*Id*. at 18-21.) Second, Defendants argue, even if Mr. Wise could be qualified as such an expert, his testimony should be precluded because it is not based on sufficient facts or data, it is not the product of reliable principles and methods, and he has not reliably applied the principles and methods to the facts of the case as required by Fed. R. Evid. 702; rather, his testimony is the product of speculative and unsubstantiated theories that are contradicted by the admissible record evidence. (*Id*. at 21-24.)

### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts the following two arguments. (*See generally* Dkt. No. 22, Attach. 7, at 7-8 [attaching pages "7" and "8" of Plf.'s Opp'n Memo. of Law].) First, Plaintiff argues, Mr. Wise does possess the required knowledge, skill, experience, training, or education, under Fed. R. Evid. 702, to be qualified as an expert on the subject of oil or gas drilling rigs (much less the more narrow subject of the operation of power tongs on those rigs), because (a) generally, if an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, courts within the Second Circuit will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent, and (b) while here Mr. Wise admittedly lacks experience in oil and gas drilling, he has extensive experience in the design and operation of hydraulic equipment (such as the power tong in question), which is the subject of his proffered expert testimony. (*Id*. at 7-8.) Second, Plaintiff argues, Mr. Wise's proffered expert testimony is sufficiently reliable because it consists of two opinions that are based on his "substantial engineering knowledge regarding the hydraulics of the [power tongs]": (a) his

opinion that the spring inside the power tong could not possibly have broken (as a result of impact with the elevators) in the manner described by Defendant Kitchen, and (b) his opinion that, if Defendant had bounced the power tong before the accident as described by Plaintiff, then Defendant would have been improperly operating the power tong. (*Id*. at 8.)

In addition, Plaintiff requests that the testimony of Defendants' expert (George H. Medley, Jr.) be precluded at trial because it lacks the proper foundation and/or any relevance. (*Id*. at 9-10.)

### 3. Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants expand on their previously asserted arguments that (1) Mr. Wise does not possess the required knowledge, skill, experience, training, or education to be qualified as an expert on the subject in question, and (2) even if Mr. Wise could be qualified as such an expert, his testimony should be precluded because it is not based on sufficient facts or data, it is not the product of reliable principles and methods, and he has not reliably applied the principles and methods to the facts of the case. (*See generally* Dkt. No. 26, Attach. 3, at 8-10 [attaching pages "4" through "6" of Defs.' Reply Memo. of Law].) In addition, in an affidavit submitted by defense counsel, Defendants oppose Plaintiff's request for an Order precluding the trial testimony of Defendants' expert. (Dkt. No. 26, at ¶¶ 24-29 [Alweis Aff.].)[1]

---

[1]    Defense counsel is respectfully reminded that, in this District, affidavits may not contain legal arguments and must be restricted to matters of which the affiant possesses personal knowledge. N.D.N.Y. L.R. 7.1(a)(2). In this particular circumstance, however, the Court will exercise its discretion to consider the legal arguments contained in defense counsel's affidavit, given that they are approximately one page in length (and thus would not, if added to Defendants' reply memorandum of law, violate the 10-page limitation on such reply memoranda), conspicuously labeled (and thus not easily overlooked), and asserted in response to a cross-motion that was improperly filed by Plaintiff. *See*, *infra*, Part III.B. of this Decision and Order.

**C.    Parties' Briefing on Defendants' Motion for Summary Judgment, and Plaintiff' Cross-Motion to Preclude Defendants' Expert Witness Testimony**

**1.    Defendants' Memorandum of Law**

Generally, in their memorandum of law, Defendants assert the following four arguments in favor of their motion for summary judgment.  (*See generally* Dkt. No. 19, Attach. 13, at 25-29 [attaching pages "20" through "24" of Defs.' Memo. of Law].)  First, Defendants argue, Plaintiff's claim of negligence must be dismissed because the record contains no admissible record evidence from which a rational fact finder could conclude that (a) Defendants (which were *not* a general contractor) owed any legal duty to Plaintiff (who was merely a fellow subcontractor of Defendants) to provide a safe workplace, and (b) in any event, Defendants breached any such legal duty by causing the fall of the power tong, which was instead caused by Plaintiff's employer's careless lowering of elevators on top of the power tong.  (*Id*. at 25-26.) Second, Defendants argue, Plaintiff's claim of a violation of New York Labor Law § 200 must be dismissed for the same two reasons.  (*Id*.)  Third, Defendants argue, Plaintiff's claim of a violation of New York Labor Law § 240–which arises under § 240(1)–must be dismissed because the record contains no admissible record evidence from which a rational fact finder could conclude that Defendants had been granted either the power to enforce safety standards at the site in question or the authority to supervise and control the activity that caused the injury (which are prerequisites for the success of such a claim, under the circumstances).  (*Id*. at 26-27.) Fourth, Defendants argue, Plaintiff's claim of a violation of New York Labor Law § 241(6) must be dismissed because (a) it suffers from the same evidentiary deficiency that precludes the success of Plaintiff's claim under § 240(1), and (b) in any event, the success of that claim requires a violation of N.Y. Comp. Codes R. & Regs. tit. 12, §§ 23-1.5, 23-1.6, 23-1.7 or 23-

1.10, which either are too general in nature to confer liability on Defendants or are simply inapplicable to the fact of this case.  (*Id*. at 26-29.)

### 2.     Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff asserts the following three arguments.  (*See generally* Dkt. No. 22, Attach. 7, at 1-6 [attaching pages "1" through "6" of Plf.'s Opp'n Memo. of Law].)  First, Plaintiff argues that his claim of negligence survives Defendants' motion because the record contains admissible record evidence from which a rational fact finder could conclude that Defendants created the dangerous condition that caused Plaintiff's injury, by bouncing the power tong several times before the accident, and then carelessly dropping the power tong onto Plaintiff's hand.  (*Id*. at 1.)  Second, Plaintiff argues that his claim of a violation of New York Labor Law § 200 survives Defendants' motion because § 200 is a codification of a common-law claim of negligence, permitting his claim of a violation of § 200 to benefit from the same question of fact that benefits his claim of negligence.  (*Id*. at 6.)  Third, Plaintiff argues that his claim of a violation of New York Labor Law § 240(1) survives Defendants' motion because the record contains admissible record evidence from which a rational fact finder could conclude that (a) Defendants had the duty to keep safe the area within which it was performing the work delegated to it (which is where the injury occurred), and (b) in any event Defendants controlled the activity that caused the injury.  (*Id*. at 2-5.)

### 3.     Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert the following three arguments.  (*See generally* Dkt. No. 26, Attach. 3, at 5-8, 10-13 [attaching pages "1" through "4," and pages "6" through "9," of Defs.' Reply Memo. of Law].)  First, Defendants argue that the only evidence adduced by Plaintiff that Defendants caused the power tong to drop onto his

hand is the late-blossoming affidavit of Jeff Beard, which is too conclusory and/or incomplete on the issue of causation to raise a genuine issue of material fact, and which in any event is contradicted by all of the other evidence in the case, including the new affidavit of Joe Szymanski. (*Id*. at 5-8.) Second, Defendants argue that because it is undisputed that Defendants did not cause the power tong to fall on Plaintiff's hand (or control the elevators which caused the power tong to fall), all of Plaintiff's claims must be dismissed. (*Id*. at 10-13.) Third, Defendants argue that, because Plaintiff does not respond to Defendants' second argument with regard to Plaintiff's claim of a violation of New York Labor Law § 241(6), Defendants' requested for the dismissal of that claim should be deemed to be unopposed by Plaintiff. (*Id*. at 10.)

### 4.    Defendants' Supplemental Memorandum of Law

Generally, in their supplemental memorandum of law,[2] Defendants assert the following two arguments. (*See generally* Dkt. No. 30, at 4-8 [attaching pages "1" through "5" of Defs.' Suppl. Memo. of Law].) First, Defendants argue that Mr. Beard's pre-trial testimony is insufficient to create a genuine issue of material fact on the issue of causation, because Mr. Beard testified in his deposition he did not actually witness what caused Plaintiff's hand to be crushed by the power tong, but only what occurred after Plaintiff's hand was crushed by the power tong (rendering his testimony on the issue of causation to be both speculative and irrelevant). (*Id*. at 4-5.) Second, Defendants argue that Mr. Beard should be precluded from testifying at trial because (a) Plaintiff's explanation of why he was unable to serve Mr. Beard with a subpoena ad testificandum before September of 2010 was disingenuous (given that he was Plaintiff's first cousin), (b) Plaintiff's explanation of why Mr. Beard did not appear for a

---

[2]    On October 20, 2011, the Court granted the parties' leave to file supplemental memoranda of law restricted to the subject of "the elimination or creation of factual issues caused by Mr. Beard's [future deposition] testimony." (Text Order filed Oct. 20, 2011.)

deposition in September of 2010 (i.e., that he had been advised not to do so by his attorney,

given Mr. Beard's then-pending workers' compensation case) was contradicted by his deposition

testimony, (c) the importance of Mr. Beard's trial testimony is minimal, if not non-existent, and

(d) Defendants would be prejudiced by such trial testimony.  (*Id*. at 6-8.)

### 5.    Plaintiff's Supplemental Opposition Memorandum of Law

Generally, in his supplemental opposition memorandum of law, Plaintiff asserts the

following three arguments.  (*See generally* Dkt. No. 31, at 1-5 [attaching pages "1" through "5"

of Plf.'s Suppl. Opp'n Memo. of Law].)  First, Plaintiff argue that Mr. Beard's pre-trial

testimony is sufficient to create a genuine issue of material fact on the issue of causation,

because (a) in both his affidavit and deposition Mr. Beard testified that he did actually witness

what caused Plaintiff's hand to be crushed by the power tong, and (b) the fact that Mr. Beard is

Plaintiff's first cousin is immaterial for purposes of determining whether his testimony creates a

genuine issue of material fact (given the fact that the Court may not make credibility

determinations in deciding a motion for summary judgment).  (*Id*. at 2-3.)  Second, Plaintiff

argues, Mr. Beard should be not precluded from testifying at trial because (a) Plaintiff disclosed

his name during Plaintiff's initial disclosures pursuant to Fed. R. Civ. P. 26, and (b) in any event,

any prejudice to Defendants has been eliminated by the fact that they were allowed to conduct a

lengthy deposition of him.  (*Id*. at 3-4.)  Third, Plaintiff expands on his previously asserted

argument that the testimony of Defendants' expert (George H. Medley, Jr.) should be precluded

at trial because it lacks the proper foundation and/or any relevance.  (*Id*. at 4-5.)

### 6.    Defendants' Supplemental Reply Memorandum of Law

Generally in their supplemental reply memorandum of law, Defendants repeat the first

two arguments that they asserted in their supplemental memorandum of law.  (*See generally* Dkt.

No. 33, Attach. 1, at 4-5 [attaching pages "1" and "2" of Defs.' Suppl. Reply Memo. of Law].)

In addition, Defendants argue, the third argument asserted in Plaintiff's supplemental opposition memorandum of law should be rejected as improper, because the Court, in its Text Order of October 20, 2011, expressly precluded Plaintiff from making such an argument.  (*Id*. at 5.)

### D.    Undisputed Material Facts Presented by the Parties' Briefing on Defendants' Motion for Summary Judgment

With all but a few exceptions, each of the facts asserted in Defendants' 196-paragraph Amended Statement of Material Facts has been supported by them through specific and accurate citations to the record, and either expressly admitted by Plaintiff or inadequately denied by Plaintiff under the Local Rules of Practice for this Court (e.g., without a *specific* citation, or even any citation, to the record).[3]  Again, because this Decision and Order is intended primarily for the review of the parties, the Court will not recite in detail all of the undisputed material facts presented by Defendants' motion for summary judgment.  Rather, the Court will focus on the moments before and after the accident giving rise to Plaintiff's claims, and the central factual dispute presented by Defendants' motion.

This action arises out of an accident that occurred on April 27, 2008.  The accident occurred on the floor of a drilling rig at a project in Norwich, New York.  At the time of the accident, Plaintiff was employed by Union Drilling.  Union Drilling had been hired as a contractor, by the owner of the project, Nornew, Inc.

---

[3]    (*Compare* Dkt. No. 30, Attach. 12 [Defs.' Am. Statement of Material Facts] *with* Dkt. No. 32 [Plf.'s Resp. to Defs.' Am. Statement of Material Facts].)  *See also* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's response [to the movant's Statement of Material Facts] shall mirror the movant's Statement of Material Facts by *admitting and/or denying* each of the movant's assertions in matching numbered paragraphs. *Each denial shall set forth a specific citation to the record where the factual issue arises*. . . . The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.") (emphasis added).

Union Drilling directed the manner, method and timing of the work that Plaintiff was to perform.  More specifically, Plaintiff took his instruction as to the work he was to perform from a Union Drilling "driller."

On the day in question, the Union Drilling driller from whom Plaintiff took instruction was Joseph Kelly.  Mr. Kelly was the boss on the floor of the rig.  Plaintiff was the "chain hand" on the floor of the rig.  Also working with him on the floor of the rig were three other Union Drilling employees–the "corner hand," the "worm," and the "fifth man."  Working above the floor of the rig, in a derrick, was another Union Drilling employee–the "derrick man."  The derrick man was Jeff Beard.

All six members of the Union Drilling crew were "running" casing into the hole.  ("Pipe" refers to drill pipe that is used to make the hole; "casing" is what is put into the ground once the hole is prepared.)  The lifting, placement and lowering of the casing is done by the driller.  "Elevators" are latched to the casing, then used to lift the casing off the floor of the rig and lower the casing into place and into the hole.  To control the speed at which the casing is lowered, the driller uses a brake handle.  The driller alone controls the speed at which the casing is lowered.  At the time he lowers the casing, the driller stands to the side of the chain hand.

As part of the process of running casing, sections of casing are connected by means of a power tong.  A power tong is a glorified hydraulic pipe wrench.  On the date of the accident, the power tong was owned and operated by Defendant Kitchen's Power Tong Services, Inc., which had been hired by Nornew, Inc., as a contractor.  Defendant Damon Kitchen is the president and sole employee of Kitchen's Power Tong Services, Inc.  The power tong used by Defendant Kitchen was a Peck-O-Matic model 631 Hydraulic Power Tong.  While that particular power tong moves independent of the casing (by means of a cable that runs from the crown of the drilling rig), it moves upward and downward in conjunction with the movement of the casing,

because it is connected to the casing.  The power tong is positioned below the elevators.

When casing is run, sections of casing are connected vertically.  To prevent the lower section of casing from falling into the hole, "slips" are used to hold the lower section in place.  Slips are devices that go into the floor of the rig to hold the casing.  Part of Plaintiff's job as a chain hand was to hold the slips when casing was being connected.  When he was instructed as to how to use the slip handles, Plaintiff was shown to hold them with his palms facing down.  He was never instructed to hold slip handles with his palms facing up.

Once a section of casing is onto the floor of the rig and the elevators are attached, the driller then lowers a section of casing into the hole approximately two and a half to three feet.  At that point, the crew places slips around the casing to hold it in place.  Then the driller lifts another section of casing and places it on top of the lower section of casing.  The power tong operator then lifts up the power tong, places it around connection between the two sections of casing, and uses it to tighten the two sections of casing together, by spinning them using the proper torque.  Once that is accomplished, the power tong operator releases the dies on the power tong, and the driller lifts the new connected sections.  A member of the crew then lifts the slips, and the driller lowers the new connected sections into the hole.  The driller then prepares for the next section of casing.

At the time of the accident, a section of casing had already been connected by the power tong, and was in the process of being lowered by the driller, Mr. Kelly.  In addition, the power tong operator, Defendant Kitchen, was lowering the power tong by means of a lever because, as was appropriate, the power tong remained on the section of casing.  Specifically, the power tong was roughly three feet off of the floor of the rig.  Defendant Kitchen had his hand on the lever and was waiting for the elevators to get close and for the slips to be pulled.  As he was lowering the power tong into a working position, Defendant Kitchen was looking up at the casing,

watching it be lowered by Mr. Kelly.  Each section of casing was roughly 38 feet long.  While the power tongs weighed approximately 1,100 pounds, the cumulation of connected casing (i.e., including all of the casing below it) could have weighed 50,000 pounds.[4]

At that moment, Plaintiff recalled that the rig was rattling.  As a result, he went over to hold the slips so they would not fall into the hole.  The next thing he knew, his hand was crushed and the power tong was on it.  At the time his hand was crushed by the power tong, his hand was on the handle for the slip with his palm facing down.

Plaintiff did not know how it was that the power tong moved from where it was to down onto his hand. Plaintiff did not see the tong come down on his hand.  He just felt it.

The central factual dispute presented by Defendants' motion involves the issue of causation: Defendants essentially assert that falling elevators (which were not controlled by Defendants) caused the power tong to unstoppably fall on Plaintiff's hand, while Plaintiff essentially asserts that Defendant Kitchen's carelessness alone caused the power tong to fall.

In support of their assertion that the falling elevators caused the power tong to fall, Defendants have adduced the following four pieces of record evidence: (1) the deposition testimony of Defendant Kitchen that he "saw, heard and felt" the bottom of the elevators (latched onto the casing) strike the top of the "guide bell ring" of the power tong;[5] (2) the affidavit testimony and attached incident report of Nornew Inc.'s Drilling & Completion Supervisor (Joe Szymanki) that, from his location on the rig floor, he personally observed the elevator push the

---

[4]     (*Compare* Dkt. No. 19, Attach. 7, at 28, 74-75 [attaching pages "26," "72" and "73" of Kitchen Dep. Tr.] *and* Dkt. No. 26, Attach. 5 at 4 [attaching page "1-1" of the Operation and Service Manual, which states that the power tong weighs 1,175 pounds] *with* Dkt. No. 32, at ¶¶ 6, 15 [Plf.'s "Statement of Additional Facts," asserting the referenced facts].)

[5]     (*See, e.g.,* Dkt. No. 19, Attach. 7, at 71-80 [attaching pages "69" through "78" of Kitchen Dep. Tr.].)

power tong down onto Plaintiff's hand;[6] (3) the injury report and witness statement of Union

Drilling's driller on the rig (Joseph Kelly) stating that the "c[a]s[in]g" was "[r]unning" when the

incident occurred and that he "stopped [it as] soon as [he] could",[7] and (4) the deposition

testimony of Defendant Kitchen that, after the impact, he saw that the power tong was broken

(specifically, that the "spring that's in the shuck was broke" into "numerous pieces"),

subsequently requiring him to purchase and install a replacement part from Allied Machine

Works, in Zanesville, Ohio.[8]

      In support of his assertion that Defendant Kitchen's carelessness alone caused the power

tong to fall, Plaintiff relies on the following: (1) the deposition testimony of Jeffrey Beard (the

derrick man above the rig at the time, and Plaintiff's first cousin) that, before the accident,

Defendant Kitchen had been carelessly "bouncing" the power tong up and down;[9] (2) the

deposition testimony of Mr. Beard that, at the time of the incident, the casing was not being

lowered, and the elevator was "nowhere around" the power tong;[10] (3) the deposition testimony

of Mr. Beard that Nornew's Drilling & Completion Supervisor (Joe Szymanki) was not on the

rig floor at the time of the incident;[11] and (4) the deposition testimony, and expert report, of

Plaintiff's expert (Donald Wise) stating that the spring contained in the power tong's hydraulic

---

[6]      (Dkt. No. 26, Attach. 6, at ¶ 4 & Ex. A [Szymanski Decl. and Incident Report].)

[7]      (Dkt. No. 26, Attach. 2, at 7 [Kelly Report of Occupational Illness or Injury]; Dkt. No. 26, Attach. 2, at 10 [Kelly Witness Statement].)

[8]      (*See, e.g.,* Dkt. No. 19, Attach. 7, at 81-86, 100 [attaching pages "79" through "84," and page "98," of Kitchen Dep. Tr.].)

[9]      (Dkt. No. 35, at 57, 62, 138-139 [attaching pages "57," "62," "138," and "139" of Beard Dep. Tr.].)

[10]      (Dkt. No. 35, at 59-60, 121, 128-29 [attaching pages "59," "60," "121," "128," "129," and "132" of Beard Dep. Tr.].)

[11]      (Dkt. No. 35, at 127 [attaching page "127" of Beard Dep. Tr.].)

cylinder could not have been "stuck way out" as a result of an impact between the elevator and power tong, as Defendant Kitchen testified in his deposition.[12]

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motions to Preclude Expert Testimony

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions to preclude expert testimony, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the decision of *Topliff v. Wal-Mart Stores East LP*, 04-CV-0297, 2007 WL 911891, at *3, 13 (N.D.N.Y. March 22, 2007) (Lowe, M.J.), which accurately recites that standard.

### B.    Legal Standard Governing Motions for Summary Judgment

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### C.    Legal Standards Governing Plaintiff's Claims

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the general legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 19, Attach. 13, at

---

[12]    (Dkt. No. 19, Attach. 9, at 82-90 [attaching pages "81" through "89" of Wise Dep. Tr.]; Dkt. No. 19, Attach. 10, at 8-9 [attaching pages "5" and "6" of Wise's Report of Findings].)

25-29 [attaching pages "20" through "24" of Defs.' Memo. of Law]; Dkt. No. 22, Attach. 7, at 2-6 [attaching pages "2" through "6" of Plf.'s Opp'n Memo. of Law].)

## III.    ANALYSIS

### A.    Defendants' Motion to Preclude Plaintiff's Expert Witness Testimony

After carefully considering the matter, the Court grants Defendants' motion to preclude Plaintiff's expert witness, for the reasons offered by Defendants in their memoranda of law.  (*See generally* Dkt. No. 19, Attach. 13, at 16-24 [attaching pages "11" through "19" of Defs.' Memo. of Law]; Dkt. No. 26, Attach. 3, at 8-10 [attaching pages "4" through "6" of Defs.' Reply Memo. of Law].)

The Court would add only two points.  First, Mr. Wise's education, training, and experience appear particularly far removed from the subject of the results of an impact between an elevator and a power tong on an oil or gas drilling rig.  Second, his testimony on that subject appears not to be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of an application of the principles and methods to the facts of the case.

### B.    Plaintiff's Cross-Motion to Preclude Defendants' Expert Testimony

As an initial matter, the Court finds that, to the extent that Plaintiff's supplemental opposition memorandum of law contains arguments that Defendants' expert testimony should be precluded (Dkt. No. 31, at 4-5 [attaching pages "4" and "5" of Plf.'s Suppl. Opp'n Memo. of Law]), those arguments should be, and are, struck, for the reasons offered by Defendants in their supplemental reply memorandum of law.  (Dkt. No. 33, Attach. 1, at 5 [attaching page "2" of Defs.' Suppl. Reply Memo. of Law].)

Turning to the arguments for preclusion asserted by Plaintiff in his opposition memorandum of law (Dkt. No. 22, Attach. 7, at 9-10 [attaching pages "9" and "10" of Plf.'s

Opp'n Memo. of Law]), the Court rejects those arguments, and denies his cross-motion, for each

of the following three alternative grounds.  First, Plaintiff's cross-motion is unsupported by an

affidavit as required of such non-dispositive motions, by Local Rule 7.1(a)(2).  Second,

Plaintiff's cross-motion is unsupported by a showing of cause, for the reasons offered by

Defendants.  (Dkt. No. 26, at ¶¶ 24-29 [Alweis Aff.].)  Third, Plaintiff's cross-motion is moot,

because Defendants need not rely on their expert witness's testimony in order to establish the

absence of a genuine dispute of material fact as to their lack of liability for Plaintiff's injuries.

*See, supra,* Part I.D. of this Decision and Order (describing Defendants' evidence that the falling

elevators caused the power tong to fall).

### C.    Defendants' Motion for Summary Judgment

After carefully considering the matter, the Court finds that Plaintiff's evidence in

opposition to Defendants' motion is insufficient to create a genuine dispute of material fact as to

Defendants' liability for Plaintiff's injuries, for two alternative reasons: (1) Mr. Beard's

deposition testimony should be, and is, precluded under Fed. R. Civ. P. 26(e)(1)(A) and Fed. R.

Civ. P. 37(c)(1); and (2) in any event, Mr. Beard's deposition testimony is so unsubstantiated by

any other evidence, and so self-contradictory in nature, that no reasonable person could believe

that testimony, under *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005).

### 1.    Preclusion Under  Fed. R. Civ. P. 26(e)(1)(A) and<br>    Fed. R. Civ. P. 37(c)(1)

With regard to the first reason that Plaintiff's evidence is insufficient, after carefully

considering the matter, the Court sua sponte reconsiders its Text Order of October 20, 2011, to

the extent that that Text Order denied without prejudice Defendants' motion to preclude

Plaintiff's reliance on the declaration and any deposition testimony of Beard, in opposing

Defendants' motion for summary judgment.  Plaintiff did not supplement his interrogatory

response in a timely manner, as required by under Fed. R. Civ. P. 26(e)(1)(A) and Fed. R. Civ. P.

37(c)(1).  (*Compare* Dkt. No. 23, Attach. B, at 5 [Plaintiff's interrogatory response dated Feb.

22, 2010, stating "plaintiff is in the process of locating Mr. Beard and will disclose his contact

information when plaintiff locates him"] *with* Text Minute Entry dated September 1, 2010

[referencing recorded proceeding before Magistrate Judge Lowe, during which Plaintiff's

counsel told Magistrate Judge Lowe, inter alia, that Plaintiff had recently spoken to Mr. Beard]

*and* Dkt. No. 35, at 97-100, 103-104 [testifying he spoke to both Plaintiff and someone from

Plaintiff's counsel's law office approximately a year before his deposition on November 9,

2011].)[13]

---

[13]        The Court notes that Plaintiff's counsel's representation to Magistrate Judge
Lowe on September 1, 2010, that he "had not been able to get a hold of [Mr. Beard]" appears
contradicted by Mr. Beard's deposition testimony on the subject.  (*Compare* Text Minute Entry
dated September 1, 2010 [referencing recorded proceeding before Magistrate Judge Lowe,
during which Plaintiff's counsel told Magistrate Judge Lowe, inter alia, that, while Plaintiff had
recently spoken to Mr. Beard, he himself had "not been able to get a hold of [Mr. Beard]"] *with*
Dkt. No. 35, at 97-100, 103-104 [testifying he spoke to both Plaintiff and someone from
Plaintiff's counsel's law office in 2010].)  Moreover, Plaintiff's counsel's representation to
Magistrate Judge Lowe on September 1, 2010, that he was "probably" going to serve a subpoena
on Mr. Beard (whom both he and defense counsel wanted to depose) appears to conflict with Mr.
Beard's deposition testimony on the subject.  (*Compare* Text Minute Entry dated September 1,
2010 [referencing recorded proceeding before Magistrate Judge Lowe, during which Plaintiff's
counsel told Magistrate Judge Lowe, inter alia, that he "probably" was going to serve a subpoena
on Mr. Beard, whom both he and defense counsel wanted to depose]; Dkt. No. 35, at 98-99
[testifying that he never received a subpoena in this case in 2010].)  Finally, and most
importantly, Plaintiff's counsel's representation to Magistrate Judge Lowe that discovery in this
action was complete as of December 15, 2010, is contradicted by Plaintiff's attempt to use Mr.
Beard's affidavit of October 4, 2011 (and deposition of November 9, 2011).  (*See* Text Minute
Entry dated December 15, 2010 [referencing recorded proceeding before Magistrate Judge
Lowe, during which Plaintiff's counsel told Magistrate Judge Lowe, inter alia, that, "[w]e tried
to locate a couple people that were on the oil platform that day with no success, but out of state
and, with the last known addresses, I tried to have somebody serve them with a subpoena, and
was unsuccessful.  So, yeah, at this point fact discovery is complete."].)  Together, these facts
indicate a lack of good faith by Plaintiff, further undermining his explanation for his failure to
comply with his discovery obligations.

For the reasons stated by Defendants in their supplemental memorandum of law, the Court agrees that the four factors to be considered on a motion to preclude such evidence weigh decidedly in favor of preclusion.  (Dkt. No. 30, at 6-7 [attaching pages "3" and "4" of Defs.' Suppl. Memo. of Law].)  First, Plaintiff's proffered explanation of his failure to comply with his continuing duty under Fed. R. Civ. P. 26(e)(1)(A) was of little relevance (addressing why Mr. Beard did not voluntarily appear for a deposition) and in any event was contradicted by Mr. Beard's deposition testimony on the subject.  (*Compare* Dkt. No. 24 [stating that Mr. Beard was not produced for a deposition in August or September of 2010 because his attorney for his worker's compensation case would not let him testify in this case] *with* Dkt. No. 35, at 9-10, 99-101 [that the reason he did not voluntarily appear for a deposition was that he got a job and could not miss work, that it had nothing to do with his worker's comp claim, and that he never spoke to his lawyer on that claim about the proposed testimony].)

Second, the Court finds that the testimony's importance to Plaintiff is largely diminished by two facts: (1) the fact that the testimony is largely self-contradictory (*see, infra,* Part III.C.2.c. of this Decision and Order); and (2) the fact that the thrust of the testimony (i.e., the alleged liability of Defendant Kitchen) does not refute Defendants' evidence that Plaintiff himself was at least partly liable for his injuries (e.g., due to having held the slip handles with his palm facing down, rather than his palm facing up, as he should have).

Third, Defendants have been prejudiced as a result of having to meet the new testimony by being prevented from exploring the issues raised by Mr. Beard's testimony during discovery, and by being forced to play "catch-up" before trial.[14]  The Court notes that Plaintiff's late-

---

[14]    *See Bynum v. Metro. Transp. Auth.*, 01-CV-7945, 2006 U.S. Dist. LEXIS 98617, at *14 (E.D.N.Y. Nov. 21, 2006) ("In this case, without access to the documents underlying the accident and the lawsuit, and without a sufficient opportunity to investigate the circumstances surrounding the accident, plaintiff, even if afforded the opportunity now to depose these

blossoming request to conduct the deposition of Joe Szymanski was based on entirely different grounds than was Defendants' request to conduct the deposition of Mr. Beard. (*Compare* Dkt. No. 23 *with* Dkt. No. 27.) In any event, Plaintiff's request was denied only without prejudice. (Text Order filed Nov. 21, 2011.) Despite that fact, Plaintiff has not renewed his request. (*See generally* Docket Sheet.)

Fourth, and finally, a continuance is not practicable under the circumstances, given that the case is more than two-and-a-half years old, fact discovery closed more than a year and four months ago, and a motion for summary judgment has been filed and fully briefed.

### 2. Rejection Under *Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)

With regard to the alternative reason that Plaintiff's evidence is insufficient, the Court acknowledges that "[i]t is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment." *Felix-Torres v. Graham*, 06-CV-1090, 2009 WL 3526644, at *4 & n.4 (N.D.N.Y. Oct. 23, 2009) (Suddaby, J.) (collecting cases). "However, there is a narrow exception to this well-established rule." *Felix-Torres,* 2009 WL 3526644, at *4 (citation omitted); *Blake v. Race*, 487 F. Supp.2d 187, 202 (E.D.N.Y. March 29, 2007).

In *Jeffreys v. City of New York,* 426 F.3d 549 (2d Cir. 2005), the Second Circuit explained that this narrow exception applies when the following four circumstances are present: (1) the testimony of a non-movant constitutes almost the exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct

_____

witnesses, would be severely prejudiced if these witnesses were permitted to testify without affording plaintiff full disclosure. By failing to disclose this evidence sooner, defendant has effectively prevented plaintiff from exploring these issues during discovery. Should this testimony and evidence be allowed, the ensuing catch-up before trial would result in prejudice to the plaintiff.").

evidence); (2) much of the testimony in question is contradictory and incomplete; (3) because of those two facts, it will be impossible for a district court to determine whether the jury could reasonably find for the non-movant, and thus whether there are any "genuine" issues of material fact, without making some assessment of the non-movant's account; and (4) the district court, even after drawing all inferences in the light most favorable to the non-movant, determines that no reasonable person could believe the testimony in question.[15]

### a.    Whether *Jeffreys* Applies

The first issue the Court must address is whether the *Jeffreys* exception applies to the testimony of a non-party witness.  The Court acknowledges that there is a dearth of case law on this issue.  *See Blake v. Race*, 487 F. Supp.2d 187, 203 (E.D.N.Y. 2007) ("As an initial matter, *Jeffreys* and these other cases are distinguishable from the instant case because they involved a

---

[15]    *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary judgment.  Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, . . . conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

court declining to credit the unreliable testimony of a party to the lawsuit, as opposed to a witness. Defendants have failed to cite any case where a court has extended the holding of *Jeffreys* to disregard the testimony of a non-party witness in a summary judgment motion on credibility grounds. Nevertheless, the Court is willing to assume that *Jeffreys* could be extended to exceptional circumstances where a witness' testimony is so fanciful and lacking in any corroboration that it could be insufficient to create an issue of fact because no rational jury could believe it.").

However, the Court is unpersuaded by a literal adherence to the language of *Jeffreys*, which speaks only of the testimony of a "plaintiff," although it clearly can apply also to the testimony of a "defendant" (as long as that defendant is a non-movant).  Moreover, the presumed policy rational for not further applying *Jeffreys* to a non-party witness (i.e., that the non-party witness is less inherently biased as is a party) would not appear to forcefully apply where, as here, the non-party witness is the first cousin of, and has a "close" relationship with, a party.[16] Finally, and perhaps more importantly, the Court has, in fact, found a well-reasoned case applying the *Jeffreys* exception to the testimony of a non-party, specifically, the deposition testimony of party's prior owner (who sold his ownership in Plaintiff two years before his deposition testimony was given).[17]  As a result, the Court finds that the *Jeffreys* exception may

---

[16]       (Dkt. No. 35, at 5-7 [attaching pages "5" through "7" of Beard Dep. Tr.].)

[17]       *See Chapel Park Villa, Ltd. v. The Travelers Ins. Co.*, 02-CV-0407, 2006 WL 2827867, at *2-4, 7-8 (W.D.N.Y. Sept. 29, 2006) (applying *Jeffreys* before concluding that "the only admissible evidence to support Plaintiff, is [prior-owner Salvartore] Calandra's [deposition testimony] that he met with or called [Plaintiff's insurance agent, Patrick] Comerford[,] to report the August 1, 1998 accident, is so lacking in credibility that there is no genuine issue of material fact and therefore no rational jury could find in favor of the nonmoving party.") (internal quotation marks omitted); *see also Chapel Park Villa, Ltd. v. The Travelers Ins. Co.*, 02-CV-0407, Ex. S to Def.'s Statement of Material Facts, at 5-6 (W.D.N.Y. filed Jan. 19, 2005) (attaching pages "5" and "6" of transcript of Salvatore's deposition taken on Oct. 5, 2004). Generally, former employees of a party are treated as non-party witnesses.  *See, e.g., In re*

apply to the testimony of a non-party witness such as Mr. Beard.

**b.    Whether Mr. Beard's Deposition Testimony Is Unsubstantiated by Other Evidence**

Having decided that the *Jeffreys* exception may apply under the circumstances, the next issue that the Court must address is whether Mr. Beard's deposition testimony is largely, if not entirely, unsubstantiated by the other evidence in the record.  After carefully considering this question, the Court answers it in the affirmative.

The only two pieces of record evidence that could conceivably substantiate Mr. Beard's deposition transcript are (1) his own affidavit, and (2) the deposition transcript and expert report of Mr. Wise.  However, Mr. Beard's own affidavit cannot be relied on under the circumstances. As an initial matter, Mr. Beard's affidavit appears somewhat specious in nature, because he did not write the affidavit and cannot remember speaking to either Plaintiff or anyone from his counsel's office before it was written.  (Dkt. No. 35, at 94-97, 101-103.)  In any event, Mr. Beard's affidavit conflicts in several material respects with his deposition testimony;[18] and a party cannot create a genuine dispute of material fact on a motion for summary judgment by relying on conflicts in his own witness's testimony.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).

---

*Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp.2d 392, 397 (S.D.N.Y. 2006) (treating former employees as non-party witnesses), *accord, In re Connetics Sec. Litig.*, 06-CV-11496, 2007 WL 1522614, at *7 (S.D.N.Y. May 23, 2007), *Pilevesky v. Suntrust Bank*, 10-CV-2290, 2010 WL 4879006, at *3 (E.D.N.Y. Nov. 22, 2010).

[18]    (*Compare* Dkt. No. 22, Attach. 1, ¶ 4 ["I observed the power tong operator drop the power tongs onto Roger Matheson's hand while Mr. Matheson's hand was clearly underneath the power tong."] with Dkt. No. 35, at 114-19, 134 [testifying that he never saw the tongs actually strike plaintiff's hand]; *compare* Dkt. No. 22,  Attach. 1, ¶ 3 [swearing that he was located 20 feet above the rig's floor during the time of the accident] *with* Dkt. No. 35, at 57 [testifying that he was located 30-35 feet above the rig's floor during the time of the accident].)

Turning to the other possible piece of substantiating evidence (i.e., the deposition transcript and expert report of Mr. Wise), that evidence also cannot be relied on under the circumstances.  As an initial matter, Mr. Wise's testimony has already been precluded, as described above in Part III.A. of this Decision and Order.  In any event, Mr. Wise's testimony on this subject is so lacking in evidentiary value that the Court is reminded of the point of law that a party may not create a dispute of material fact on a motion for summary judgment merely by questioning the form or veracity of testimony adduced by the moving party.  *Felix-Torres v. Graham*, 687 F. Supp.2d 38, 51, n.9 (N.D.N.Y. 2009) (Lowe, M.J.).  Indeed, Mr. Wise rather clearly admits in his deposition that he does not "have any evidence that says the elevator didn't cause the power tongs to come down on [Plaintiff's hand]."  (Dkt. No. 19, Attach. 9, at 155 [attaching page "154" of Wise Dep. Tr.].)  Furthermore, Defendants' motion papers largely, if not entirely, resolve the issue of whether the "spring" could have been "stuck way out" as observed by Defendant Kitchen.[19]  Finally, and most importantly, any dispute regarding spring breakage is immaterial under the circumstances, because proof of a broken power tong is simply not necessary to establish that the elevators struck the power tong before the accident.  (As a result, the absence of such proof is of little, if any, materiality.)

### c.  Whether Mr. Beard's Deposition Testimony Is Self-Contradictory

Having decided that Mr. Beard's deposition testimony is largely, if not entirely, unsubstantiated by the other evidence in the record, the next issue that the Court must address is whether Mr. Beard's deposition testimony is riddled with self-contradictions.  Again, after

---

[19]    Based on Defendants' motion papers, it appears that the "spring" that Defendant Kitchen observed "stuck way out" after the incident was in fact a *cylinder* containing a spring. (*See, e.g.,* Dkt. No. 26, Attach. 4, at ¶¶ 17-20 [Medley Reply Decl.]; Dkt. No. 26, Attach. 5, at 52 [attaching "Figure 8-7" of the Operation and Service Manual].)

carefully considering this question, the Court answers it in the affirmative.  Mr. Beard

contradicted himself regarding the following six material subjects during his deposition: (1) his

distance above the rig plat form;[20] (2) whether or not he actually saw the power tong strike

Plaintiff's hand;[21] (3) whether or not he actually saw Plaintiff's hand as it was stuck and how it

was freed;[22] (4) whether or not the casing was being lowered at the moment the accident

occurred;[23] (5) whether or not he knows where the elevator was at the time of the accident;[24] and

(6) whether or not he talked to Plaintiff before he signed his affidavit of October 4, 2011.[25]

 For all of these reasons, the Court finds that no reasonable person could believe the

testimony in question.

---

[20] (*Compare* Dkt. No. 35, at 148 [testifying that he could have been 20 feet above
the rig platform] *with* Dkt. No. 35, at 57 [testifying that he was 30 to 35 feet above the rig
platform].)

[21] (*Compare* Dkt. No. 35, at 59, 62-64, 141, 149 [testifying that he actually saw the
power tong strike Plaintiff's hand] *with* Dkt. No. 35, at 114-19, 134 [testifying that the first thing
he noticed about the hand was the power tong sitting funny and Plaintiff pulling his hand out
from the slips, and that he never saw the tong actually strike Plaintiff's hand].)

[22] (*Compare* Dkt. No. 35, at 115, 117-18, 142 [testifying that he saw Plaintiff's hand
being stuck for a "split second," and that he saw the power tong raise up off of Plaintiff's hand to
free it] *with* Dkt. No. 35, at 60, 71-72, 74-75, 77, 115 [testifying that the first thing he saw was
Plaintiff pulling his hand out, that he does not know how long Plaintiff's hand was stuck, that he
does not know how Plaintiff got his hand out, and that he did not see anything that had to be
lifted off of Plaintiff's hand in order for it to be removed].)

[23] (*Compare* Dkt. No. 35, at 121, 128-130, 132, 141, 149 [testifying that the casing
was had stopped moving at the moment the accident occurred] *with* Dkt. No. 35, at 56, 59, 61,
64, 131 [testifying that the casing was being lowered at the moment the accident occurred].)

[24] (*Compare* Dkt. No. 35, at 59-60, 120 [testifying that, at the time of the accident,
the elevator was five feet below the block and "nowhere around the tongs"] *with* Dkt. No. 35, at
75-77 [testifying that, at the time of the accident, he could not say how many feet below the
block the elevator was located].)

[25] (*Compare* Dkt. No. 35, at 96  [testifying that he did talk to Plaintiff before he
signed the affidavit] *with* Dkt. No. 35, at 95, 101-103 [testifying that he did not talk to Plaintiff
before he signed the affidavit].)

### 3.    Alternative Ground for Dismissal of Plaintiff's Fourth Claim

In the alternative, Plaintiff's fourth claim–which is dependent on a violation of state regulations–is dismissed because (1) Defendants' request for dismissal of that claim was unopposed by Plaintiff, and (2) that request possesses (at the very least) facial merit. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gemini*, 07-CV-0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct. 30, 2009) (Suddaby, J.) (collecting cases).

**ACCORDINGLY**, it is

**ORDERED** that, to the extent that Plaintiff's supplemental opposition memorandum of law contains arguments that Defendants' expert testimony should be precluded (Dkt. No. 31, at 4-5 [attaching pages "4" and "5" of Plf.'s Suppl. Opp'n Memo. of Law]), those arguments are **STRUCK** from the record; and it is further

**ORDERED** that Defendants' motion to preclude Plaintiff's expert witness testimony (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion to preclude Defendants' expert witness testimony (Dkt. No. 22, Attach. 7, at 9-10) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 19) is **GRANTED**.  Plaintiff's complaint is dismissed, and the clerk is directed to enter judgment in favor of the defendants.

Dated: June 12, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge